(26 Misc. Rep. 461.)

In re HURLBUT'S ESTATE.

(Surrogate's Court, New York County. February, 1899.)

WILLS—CONFIDENTIAL RELATIONS—PRESUMPTION.

Testator, a man over 80 years old, left his property in trust for his two sons for life. On the death of one, with whom testator held confidential relations, his share was to go to his widow and children. On the death of the other, his share was to revert to the first son. Such other son had been divorced, and testator entertained religious convictions against the second marriage of divorced persons. The child of a deceased daughter, who had, with her husband, been supported by testator for many years, received no express bequest, but the only bequest to grandchildren was a general residuary one, from which she was not excluded. *Held*, that there was no such inequality in the will as to cast upon the favored son the burden of proving that he had not abused his confidential relations with testator.

Application for probate of the will of Henry A. Hurlbut, deceased. Granted.

Peabody, Baker & Peabody, for proponents.
Stickney, Spencer & Ordway, for contestants.

FITZGERALD, S. The testator died on the 11th day of November, 1897, at the age of 89, leaving an estate of over $850,000. He left two sons, William and Henry, and a grandchild, Mrs. Hall, the only child of his deceased daughter. On the 20th of September, 1894, he made his last will and testament, and thereafter, from time to time, added five codicils, two of them executed in 1895, one in 1896, and two in 1897; the last one having been made but 10 days previous to his death. After various bequests, the will sets up a trust, during the lives of his two sons, in the residuary estate, the terms of which are as follows: So long as both sons survive, the net income is to be divided equally between them. Should William die first, then during the lifetime of Henry the share of William is given to his widow, if living, and, if dead, to the children of William. Should Henry die first, the entire income is to be applied to the use of Wil-liam during his life. Upon the death of both, the trust estate is given to all the decedent's then surviving grandchildren and Margaret H. Hurlbut, the wife of William. The granddaughter, Mrs. Hall, is not mentioned in the will, but is, of course, included in the general

designation of "grandchildren," who take upon the termination of the trust estate. It was claimed on behalf of the contestants that the grossly unequal provisions of the will, combined with the age of the testator, and the confidential relations existing between the testator and the favored beneficiary, raised a legal presumption against the validity of the will, and that the burden rested upon the proponents of showing affirmatively that there was no abuse of the confidential relation which such beneficiary occupied towards his parent. I cannot accede to this proposition, unless there be added to it the qualification that the facts establishing the conditions described are of such a character as by themselves, or in connection with other circumstances proved, justify such presumption, or excite the suspicion of the court that undue influence has been exercised upon the testator by the favored beneficiary. The facts here established, in my judgment, fall far short of justifying such presumption or exciting such suspicion. I have carefully reviewed the evidence in this case, and have attentively considered the able arguments of the respective counsel; and I have come to the conclusion that the contestants have failed to establish that the will or codicils in question were procured by the influence, unduly exercised, of the proponents. Sufficient reason for the discrimination of the decedent in favor of his son William is abundantly shown by the evidence. He shared in a larger degree than Henry in the favor and affections of his father. He was his confidant in his business affairs, and his aid and advice were availed of by his father in most, if not all, of his business transactions. The decedent was a man of sincere religious convictions, who put in practice the tenets of his faith. Those discountenanced, and he seemed to regard with disfavor, the remarriage of persons who had been divorced. The fact that his son had been divorced, and the probability that he might again marry after his father's death, are circumstances which may account for his failure to provide in terms for the issue of Henry by any marriage made subsequent to his death. As to his deceased daughter, she and her husband had been supported by him for a great many years, and his granddaughter is really treated on even terms with his other grandchildren. Considerable stress is laid by one of counsel for contestants upon the alleged incapacity of testator to execute a testamentary instrument. In the first place, his advanced age is strongly urged. Advanced age is of itself no disqualification to the making of a will, though in such a case the court scrutinizes more closely the circumstances surrounding the preparation and execution of the paper. The proponents showed the capacity of the decedent by the testimony of the subscribing witnesses, and the evidence of numerous other persons who knew the decedent intimately. A review of this evidence, and a perusal of the diaries, letters, and other papers introduced in evidence, and which were written by the testator, or at his dictation, convince me that the proponents have fully sustained the burden of establishing the testamentary capacity of decedent at the time of the execution of the paper writings constituting his will. Some added force must also be given by the omission of the contestants to introduce any affirmative evidence on this subject. Indeed, at page 4 of the brief in reply for the contest-

ant Mrs. Hall, there is a tacit admission that this specific ground of objection was abandoned.

A decree may be presented admitting the papers propounded. Decreed accordingly.